

FILED
2010 Dec-01 PM 12:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **CIVIL ACTION NO.:** |
| **v.** | ) ) ) | |
| **LINDA PEACOCK, KELLY SCHUCK, ROBERT L. WIGGINS, JR., ANN K. WIGGINS, GALAPAGOS, LLC, BEOWULF, LLC, and WOLF PUP, LLC,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## PETITION FOR DECLARATORY JUDGMENT

COMES NOW The Automobile Insurance Company of Hartford, Connecticut ("AICH"), and files the Petition for Declaratory Judgment as follows:

1.     This action for declaratory relief is brought to determine the rights, duties, status, and legal rights under the insurance policies described below.

2.     AICH seeks to invoke this Court's jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. Section 1332. As discussed below, AICH is diverse from each defendant and the amount in controversy exceeds $75,000.

3.     AICH is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Connecticut.

4.     Upon information and belief, Defendant Linda Peacock is a citizen and resident of Jefferson County, Alabama.

5.     Upon information and belief, Defendant Kelly Schuck is a citizen and resident of Jefferson County, Alabama.

6.     Upon information and belief, Defendant Robert L. Wiggins, Jr. is a citizen and resident of Jefferson County, Alabama.

7.     Upon information and belief, Defendant Ann K. Wiggins is a citizen and resident of Jefferson County, Alabama.

8.     Upon   information   and   belief,   Defendant   Galapagos,   LLC ("Galapagos") is a limited liability company organized and existing under the laws of the State of Alabama, with its principal place of business in Alabama.

9.     Upon information and belief, Defendant Beowulf, LLC ("Beowulf") is a limited liability company organized and existing under the laws of the State of Alabama, with its principal place of business in Alabama.

10.     Upon information and belief, Defendant Wolf Pup, LLC ("Wolf Pup") is a limited liability company organized and existing under the laws of the State of Alabama, with its principal place of business in Alabama.

2

11. Venue in this District is proper pursuant to 28 U.S.C. Sections 1391(a)(1) and (2), as all of the defendants reside in this District and/or a substantial part of the events, acts, or omissions giving rise to the asserted claims took place in this District.

## **FACTUAL BACKGROUND**

12. AICH issued a homeowners policy to Peacock, bearing policy number 978033412-636-1, for the policy period May 18, 2005 to May 18, 2006 (the "homeowners policy"). On July 21, 2005, Schuck was added as a named insured to the homeowners policy. A certified copy of the homeowners policy for policy period May 18, 2005 to May 18, 2006 is attached hereto as Exhibit "A" and is incorporated by reference herein.

13. AICH renewed the homeowners policy with Peacock and Schuck as the named insureds for the following policy periods:

> May 18, 2006 to May 18, 2007;
> May 18, 2007 to May 18, 2008;
> May 18, 2008 to May 18, 2009;
> May 18, 2009 to May 18, 2010; and
> May 18, 2010 to May 18, 2011.

3

Certified copies of the homeowners policies for these policy periods are attached hereto as Exhibits "B" through "F" and are incorporated by reference herein.[1]

14. AICH also issued a personal umbrella policy to Peacock, bearing policy number 931575207-311-7, for the policy period May 21, 2004 to May 21, 2005 (the "umbrella policy"). On July 21, 2005, Schuck was added as a named insured to the umbrella policy. A certified copy of the personal umbrella policy for policy period May 21, 2004 to May 21, 2005 is attached hereto as Exhibit "G" and is incorporated by reference herein.

15. AICH renewed the umbrella policy with Peacock and Schuck as the named insureds for the following policy periods:

> May 21, 2005 to May 21, 2006;
> May 21, 2006 to May 21, 2007;
> May 21, 2007 to May 21, 2008;
> May 21, 2008 to May 21, 2009;
> May 21, 2009 to May 21, 2010; and
> May 21, 2010 to May 21, 2011.

---

[1] The entire Homeowners policy for the policy period of May 18, 2005 to May 18, 2006 is contained in Exhibit "A." For the subsequent renewal policy years, which are attached as Exhibits "B" through "F," only the Declarations pages referencing the forms contained in each policy are present. To the extent that any forms or endorsements were added to or substituted for forms from the previous policy year(s), they are also contained in the certified copy of that year's renewal policy attached as exhibits. As relates to those certified policies that contain only Declarations pages, those policies contained the same forms and endorsements as the previous policy year.

4

Certified copies of the umbrella policies for these policy periods are attached hereto as Exhibits "H" through "M" and are incorporated by reference herein.[2]

16. Peacock is presently, and was at all times relevant to this action, a licensed attorney and a shareholder in the law firm of Baker, Donelson, Bearman, Caldwell, and Berkowitz, P.C. ("Baker Donelson") in Birmingham, Alabama.

17. Schuck is presently, and was at all times relevant to this action, a corporate psychologist in Birmingham, Alabama.

18. The coverage issues in this case involve Peacock's and Schuck's involvement for profit in two condominium development projects in or near Orange Beach, Alabama, the Wolf Bay project ("Wolf Bay") and the Paradise Resort Project ("Paradise Resort").

## A.    The Wolf Bay Project

19. Peacock, Schuck, Robert Wiggins, Ann Wiggins, and Watershed Investments, LLC were members of Wolf Pup, a limited liability company.[3]

---

[2] The entire Umbrella policy for the policy period of May 21, 2004 to May 21, 2005 is contained in Exhibit "G." For the subsequent renewal policy years, which are attached as Exhibits "H" through "M," only the Declarations pages referencing the forms contained in each policy are present. To the extent that any forms or endorsements were added to or substituted for forms from the previous policy year(s), they are also contained in the certified copy of that year's renewal policy attached as exhibits. As relates to those certified policies that contain only Declarations pages, those policies contained the same forms and endorsements as the previous policy year.

[3] Wolf Pup, Robert Wiggins, and Ann Wiggins, as co-members of Wolf Pup, initiated litigation against Schuck and Peacock arising out of their involvement in losses suffered in Wolf Pup's real estate development business.

20.     Robert Wiggins and Ann Wiggins were the sole members of Beowulf, a limited liability company.  Beowulf purchased an interest in Wolf Pup, which then purchased an interest in the Wolf Bay Project in or near Orange Beach, Alabama.

21.     On or about July 29, 2005, Wolf Pup acquired the option to purchase land to build the Wolf Bay development in or near Orange Beach, Alabama.

22.     While Wolf Pup was in the process of building Wolf Bay, at least seventeen prospective condominium unit buyers provided letters of credit in exchange for the right to purchase units after the construction was complete. However, these prospective buyers did not purchase the units after the condominiums were completed, and they allowed the letters of credit to expire.

### The Jefferson County Beowulf Litigation.

23.     On or about July 27, 2009, Beowulf and Wolf Pup filed a lawsuit against Peacock; Schuck; Peacock's law firm, Baker Donelson; and other defendants in the Circuit Court for Jefferson County, Alabama, Civil Action No.: 09-902410 (the "Jefferson County Beowulf Litigation").

24.     The Jefferson County Beowulf Litigation arises out of Peacock's and Schuck's involvement in the Wolf Bay real estate development.

6

25.    In the Jefferson County Beowulf Litigation, Beowulf and Wolf Pup assert the following claims against Peacock and Schuck: "Violation of § 12(2) of the Securities Act of 1933 and the Investment Advisors Act of 1940 Sale of Security by False Prospectus"; "Violation of § 12(1) of the Securities Act of 1933 and Investment Advisors Act of 1940 Sale of an Unregistered Security"; "Violation of the Alabama Securities Act Fraudulent Sale of Securities"; "Breach of Contract and Fiduciary Duty"; "Negligence"; "Conversion"; "Fraudulent Inducement"; "Fraudulent Suppression"; "Conspiracy to Commit Fraud"; "Recission and Damages for Violation of Condominium Act";and "Common Law Indemnification."

26.    A copy of the Complaint in the Jefferson County Beowulf Litigation is attached hereto as Exhibit "N."

27.    Peacock and Schuck made a claim with AICH for defense and indemnity under the provisions of their homeowners policy and their umbrella policy for the claims asserted against them in the Jefferson County Beowulf Litigation.

28.    AICH agreed to defend Schuck in the Jefferson County Beowulf Litigation pursuant to a full reservation of rights.

7

29.     AICH is presently defending Schuck in the Jefferson County Beowulf

Litigation pursuant to a full reservation or rights.

30.     Upon information and belief, Peacock is currently being defended by

her law firm's malpractice insurance carrier under its policies.

31.     AICH has reserved all rights regarding Peacock.

32.     AICH does not have a duty to defend and/or indemnify Peacock or

Schuck under the terms of the policies.

## B.     The Paradise Resort Project

33.     Paradise Resort was a twenty-four unit mid-rise condominium

development in Orange Beach, Alabama.

34.     Paradise Resort was to be part of the larger Bama Bayou development.

35.     On or about June 7, 2006, Peacock formed Galapagos as a limited

liability company to provide financing for the Paradise Resort project.

36.     Schuck, Robert Wiggins, and Ann Wiggins were the only members

of Galapagos.[4]

37.     On or about September 29, 2006, Vision Bank provided a $5,000,000

construction loan for the Paradise Resort project.

_____

[4] Members Robert and Ann Wiggins were the only capital contributors to Galapagos. Schuck
served as manager of Galapagos. Galapagos, Robert Wiggins, and Ann Wiggins have initiated
litigation against Schuck based on her actions as manager and member of Galapagos.

38.    Robert Wiggins signed a personal guaranty for the full $5,000,000 amount of the loan.

39.    The $5,000,000 loan proceeds were depleted, but the Paradise Resort project was not completed.

### (1)    The Baldwin County Paradise Litigation.

40.    On or about October 7, 2008, Vision Bank filed a Complaint in the Circuit Court of Baldwin County, Alabama, Civil Action No.: 2008-901087 (the "Baldwin County Paradise Litigation") naming Galapagos and Robert Wiggins as two of a number of defendants.

41.    Through the Baldwin County Paradise Litigation, Vision Bank seeks to collect the balance of the construction loan from Galapagos and Robert Wiggins.

42.    On or about May 8, 2009, Galapagos and Robert Wiggins filed cross-claims against Schuck in the Baldwin County Paradise Litigation.

43.    The cross-claims against Schuck in the Baldwin County Paradise Litigation arise out of Schuck's involvement in the Paradise Resort real estate development.

9

44.     Galapagos asserts the following counts against Schuck in the Baldwin County Paradise Litigation: "Sale of Unregistered Security"; "Sale of Security by False Prospectus"; "Fraudulent Sale of Securit[y]"; and "Fraudulent Inducement."

45.     A copy of the Galapagos Cross-claim in the Baldwin County Paradise Litigation is attached hereto as Exhibit "O."

46.     Robert Wiggins asserts the following counts against Schuck in the Baldwin County Paradise Litigation: "Fraudulent Inducement"; "*Non EST Factum* of Guaranty Agreement"; "Recission of Guaranty"; "Breach of Contract"; and "Negligent Lending and Account Administration."

47.     A copy of Robert Wiggins's Cross-claim in the Baldwin County Paradise Litigation is attached hereto as Exhibit "P."

48.     Schuck made a claim for defense and indemnity with AICH under the provisions of the homeowners policy and the umbrella policy for the claims asserted against her in the Baldwin County Paradise Litigation.

49.     AICH agreed to defend Schuck in the Baldwin County Paradise Litigation pursuant to a full reservation of rights.

50.     AICH is presently defending Schuck in the Baldwin County Paradise Litigation pursuant to a full reservation or rights.

10

51.    AICH does not have a duty to defend and/or indemnify Schuck under the terms of the policies.

### b.    The Federal Court Paradise Litigation.

52.    On or about May 18, 2009, Galapagos, Beowulf, Robert Wiggins, and Ann Wiggins filed a lawsuit in the United States District Court for the Northern District of Alabama, Southern Division, Case Number 2:09-cv-00978-LSC against multiple defendants, including Peacock and Schuck (the "Federal Court Paradise Litigation").

53.    The plaintiffs in the Federal Court Paradise Litigation assert "Count One for Violations of Sections 10(b) and 20(a) of the Securities and Exchange Act and SEC Rule 10(b)(5)" against all of the defendants, including Peacock and Schuck.

54.    The Federal Court Paradise Litigation against Peacock and Schuck arises out of Peacock's and Schuck's involvement in the Paradise Resort real estate development.

55.    A copy of the Complaint in the Federal Court Paradise Litigation is attached hereto as Exhibit "Q."

11

56.     Peacock and Schuck made a claim for defense and indemnity to AICH under the provisions of their homeowners policy and their umbrella policy for the claims asserted against them in the Federal Court Paradise Litigation.

57.     AICH agreed to defend Schuck in the Federal Court Paradise Litigation, pursuant to a full reservation of rights.

58.     AICH is presently defending Schuck in the Federal Court Paradise Litigation pursuant to a full reservation or rights.

59.     Upon information and belief, Peacock is currently being defended by her law firm's malpractice insurance carrier under its policies.

60.     AICH has reserved all rights regarding Peacock.

61.     AICH does not have a duty to defend and/or indemnify Peacock or Schuck under the terms of the policies in any of the suits.

62.     AICH avers that there is no coverage for Schuck or Peacock under the homeowners or umbrella policies for the claims made against them in any of the suits.  The claims made in all of the suits against Peacock and Schuck are not within the terms of the policies; the damages may not fall within certain of the AICH policy periods; the claims are excluded pursuant to the exclusions of the policies; and/or the conditions of the policies have not been met.

12

63.     AICH avers that Peacock and Schuck are not entitled to policy

benefits under either the homeowners policy or the umbrella policy for defense or

indemnity for any of the claims made against them in any of the suits.

64.     As such, a justiciable controversy exists with regard to coverage and

defense for Peacock and Schuck under AICH's homeowners policy and AICH's

umbrella policy with regard to the claims asserted against them.

## THE HOMEOWNERS POLICY

65.     The insuring agreement of the AICH homeowners policy provides, in

part:

### SECTION II – LIABILITY COVERAGES
### COVERAGE E PERSONAL LIABILITY

If a claim is made or suit is brought against any insured for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, even if the claim or suit is false, we will:

**a.**     Pay up to our limit of liability for the damages for which the **insured** is legally liable.   Damages include prejudgment interest awarded against the **insured**; and

**b.**     provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.   We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

13

[Exhibit "A," policy form HA-6 (06-91), p. 12 of 18].[5]

66.     The homeowners policy includes definitions, including the following:

**2.**     **"bodily injury"** means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.**     **"business"** includes trade, profession or occupation. The rendering of full time child care services for a fee is a business pursuit.

**4.**     **"insured"** means you and the following residents of your household:

    **a.**     your relatives;

    **b.**     any other person under the age of 21 who is in the care of any person named above.

. . .

**6.**     **"occurrence"** means an accident including continuous or repeated exposure to substantially the same generally harmful conditions which results, during the policy period, in:

    **a.**     **bodily injury**; or

    **b.**     **property damage**.

**7.**     **"property damage"** means physical injury to, destruction of, or loss of use of tangible property.

[Exhibit "A," policy form HA-6 (06-91), pp. 1-2 of 18].

---

[5]The homeowners policies for each of the policy periods set forth above include the same relevant policy forms. Therefore, while AICH is only citing to the forms in the 2005-2006 policy, AICH incorporates all of the other policy periods as if fully set forth herein.

67.    The claims against Peacock and Schuck do not meet these and other requirements of the insuring agreement or the definitions of AICH's homeowners policy.

68.    The policy contains the following "other insurance" provision:

**8.    Other Insurance - Coverage E - Personal Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

[Exhibit "A" policy form HA-6 (06-91), p. 17 of 18].

69.    The AICH homeowners policies' "other insurance" provisions and conditions apply to any claim for coverage by Peacock and/or Schuck.

70.    Further, the claims against Peacock and Schuck are excluded under the provisions of AICH's homeowners' policy.

71.    Among other exclusions, the homeowners policy provides, in part:

## EXCLUSIONS

**1.    Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to **bodily injury or property damage:**

**a.**    which is expected or intended by any **insured;**

**b.**    Arising out of or in connection with a **business** engaged in by any **insured.** This exclusion applies but is not limited to an act or omission, regardless of its nature or

15

> circumstances involving a service or duty rendered,
> promised, owed or implied to be provided because of the
> nature of the **business;**

> . . .

> **d.**   arising out of the rendering or failing to render
> professional services;

> . . .

> **2.**   **Coverage E - Personal Liability,** does not apply to:

> **a.**   Liability:

> . . .

> **(2)**   under any contract or agreement.. . .

[Exhibit "A," policy form HA-6 (06-91), pp. 12-14of 18].

72.   The claims against Peacock and Schuck are excluded by the
exclusions to AICH's homeowners policy.

## THE PERSONAL UMBRELLA POLICY

73.   The AICH personal umbrella policy provides, in part:

**INSURING AGREEMENT**

In return for payment of premiums when due, and subject to the
terms of this policy, we will pay damages for which an
"insured" becomes legally liable due to "bodily injury",
"property damage", or "personal injury" caused by an
occurrence". This coverage applies only to damages in excess
of the "retained limit".

16

. . .

## DEFINITIONS

In this policy "you" and "your" mean the Named Insured shown in the "Declarations", . . .

. . .

**3.**   **"Bodily injury"** means bodily harm, sickness or disease. It includes required care, loss of services, death and mental anguish that results.

**4.**   **"Business"** includes trade, profession or occupation.

. . .

**7.**   **a.**   **"Insured"** means:

        1)   You; . . .

. . .

**9.**   **"Occurrence"** means:

    **a.**   An accident, including continuous or repeated exposure to substantially the same general conditions, that results in "bodily injury" or "property damage" during the policy period.

    **b.**   An offense, including a series of related offenses, committed during the policy period, that results in "personal injury".

    . . .

17

**10.** **"Personal injury"** means injury caused by any of the following offenses committed during the policy period:

   **a.** False arrest, detention or imprisonment, or malicious prosecution;

   **b.** Libel, slander or defamation of character; or

   **c.** invasion of privacy, wrongful eviction or wrongful entry.

. . .

**12.** **"Primary Insurance"** means insurance for the types of liabilities shown in the "Declarations" that applies to a loss before this policy responds. It includes renewal and replacement policies.

**13.** **"Property damage"** means physical injury to, destruction of, or loss of use of, tangible property.

. . .

**15.** **"Retained limit"** means the greater of:

   **a.** The total limits of any other insurance that applies to the "occurrence" which is available to an "insured"; or

   **b.** The applicable deductible amount shown in the "Declarations".

. . .

## DEFENSE AND ADDITIONAL COVERAGES

**A.** **Defense**

18

1. We will defend an "insured" if sued as a result of an "occurrence" covered by this policy even if the suit is groundless, false, or fraudulent.

2. We have the right to join in the defense of any suit likely to involve us.

3. We will not be obligated to defend any suit:

   a. If the "occurrence" is covered by any other insurance available to the "insured";

   b. If there is no applicable "primary insurance" in effect at the time of the "occurrence" and the amount of damages claimed or incurred is not more than the applicable deductible amount shown on the "Declarations"; or

   c. After our limit of liability has been exhausted by the payment of judgments or settlements.

. . .

**CONDITIONS**

. . .

8. **Other Insurance.** The coverage afforded by this policy is excess over any other insurance available to an "insured", except insurance written specifically as an excess insurance policy. If any other specifically written excess insurance policy applies, we will contribute on a pro rata basis.

19

[Exhibit "G," policy form PLUS P1 (03-99), pp. 1-2, 7 of 8].[6]

74. The claims against Peacock and Schuck do not meet these and the other requirements of AICH's umbrella policy, including, but not limited to, the policy period requirements, the insuring agreement, the primary insurance/deductible amount requirements, the defense and additional coverages section, the definitions, and the conditions to the policy.

75. Further, the claims against Peacock and Schuck are excluded under the provisions of AICH's umbrella policy.

76. The AICH umbrella policy provides, in part:

**EXCLUSIONS**

This insurance does not apply:

1. To "bodily injury" or "property damage" arising out of an act which is expected or intended by an "insured" to cause "bodily injury" or "property damage". This exclusion applies even if the "bodily injury" or "property damage":

   a. Is of a different kind, quality or degree than expected or intended; or

   b. Is sustained by a different person or entity than expected or intended.

---

[6]The umbrella policies for each of the policy periods set forth above include the same relevant policy forms. Therefore, while AICH is only citing to the forms in the 2004-2005 policy, AICH incorporates all of the other policy periods as if fully set forth herein.

. . .

2.  To "bodily injury", "property damage", or "personal injury" arising out of "business" pursuits or "business" property of any "insured".

. . .

3.  To "bodily injury", "property damage", or "personal injury" arising out of the rendering of or failure to render any professional service.

4.  To "bodily injury", "property damage", or "personal injury" arising out of an "insured's" act, error or omission as a member of a corporation's board of directors or as an officer of a corporation. This exclusion does not apply if the corporation:

    a.  Is a not for profit corporation;

    b.  Does not involve an "insured's" "business"; and

    c.  Such "insured" serves without pay.

[Exhibit "G," policy form PLUS P1 (03-99), pp. 3-4 of 8].

77.  The claims against Peacock and Schuck are excluded by the exclusions to AICH's umbrella policy.

78.  No coverage is afforded to Peacock under the AICH homeowners policy or the umbrella policy for the claims asserted in the Jefferson County Beowulf Litigation and the Federal Court Paradise Litigation; the claims against

21

Peacock are not within the terms of the policies; the claims are excluded by the exclusions to the policies; the damages are not within one or more of the policy periods for the policies; and/or the conditions of the policies have not been met.

79.     Peacock is not entitled to policy benefits for defense or indemnity for any of the above-referenced lawsuits under the homeowners policy or the umbrella policy issued by AICH.

80.     No coverage is afforded to Schuck under the AICH homeowners policy or the umbrella policy for the claims asserted in the Jefferson County Beowulf Litigation, the Baldwin County Paradise Litigation, and the Federal Court Paradise Litigation; the claims against Schuck are not within the terms of the policies; the claims are excluded by the exclusions to the policies; the damages are not within one or more of the policy periods for the policies; and/or the conditions of the policies have not been met.

81.     Schuck is not entitled to policy benefits for defense or indemnity for any of the above-referenced lawsuits under the homeowners policy or the umbrella policy issued by AICH.

82.     A bona fide controversy exists between the parties as to their legal rights, status, and liabilities pursuant to said policies.

83.     AICH hereby offers to do equity.

WHEREFORE PREMISES CONSIDERED, AICH requests the following relief:

(1)     That this Court will take jurisdiction of this petition;

(2)     That the Court will ORDER, ADJUDGE, and DECREE that this is a proper case for declaratory judgment relief and that there is a bona fide controversy between the parties as to their legal rights, status, and liabilities;

(3)     That the process of this Court be issued to the defendants as provided by law and the rules of this Court and that the defendants be ordered to respond to this petition for declaratory judgment within the time prescribed by law or in the event of failure to do so, suffer a decree pro confesso;

(4)     That upon final hearing of this cause, this Honorable Court will declare the rights, status, and legal relations of AICH and the defendants named in this petition under said policies of insurance issued by AICH;

(5)     That upon final hearing of this case, this Honorable Court will order, adjudge, declare, or decree that no coverage is afforded to the defendants under the said policies for claims brought by the aforesaid parties;

(6)     That upon final hearing of this case, this Honorable Court will order, adjudge, declare, or decree that AICH does not have a duty to defend Peacock or Schuck with regard to the above-referenced lawsuits;

23

(7)     That upon final hearing of this case, this Honorable Court will order, adjudge, declare, or decree that AICH does not have a duty to indemnify Peacock or Schuck with regard to the above-referenced lawsuits;

(8)     That upon final hearing of this case, this Honorable Court will order, adjudge, declare, or decree that AICH never owed a duty to defend either Peacock or Schuck and is entitled to reimbursement from Peacock and Schuck of all costs paid by AICH in connection with the defense of the defendants in the above-referenced lawsuits.

(9)     That if AICH are mistaken in any special relief herein prayed for, then it prays for such other, further, more general relief to which they may be entitled in the premises.

Respectfully submitted,

_____
Brenen G. Ely (0366-E54B)
Susan Haygood McCurry (5544-G54S)
Attorneys for Plaintiff The Automobile
Insurance Company of Hartford,
Connecticut

**OF COUNSEL:**
ELY & ISENBERG, LLC
The Mountain Brook Center
2700 Highway 280 East, Suite 110
Birmingham, AL 35223
Telephone: (205) 313-1200
Facsimile:   (205) 313-1201

24

## SERVE DEFENDANTS VIA CERTIFIED MAIL:

Linda Peacock
2319 1st Avenue North,#204
Birmingham, AL 35203

Kelly Schuck
2319 1st Avenue North,#204
Birmingham, AL 35203

Robert L. Wiggins, Jr.
3633 Cliff Road South
Birmingham, AL 35205

Ann K. Wiggins
3633 Cliff Road South
Birmingham, AL 35205

Galapagos, LLC.
c/o Kelly Schuck
2319 1st Avenue North,#204
Birmingham, AL 35203

Beowulf, LLC
c/o Robert L. Wiggins, Jr.
301 19th Street North
Birmingham, AL 35203

Wolf Pup, LLC
c/o Linda Peacock
1600 Southtrust Tower
420 20th Street North
Birmingham, AL 35203