# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

THE AUTOMOBILE INSURANCE
COMPANY OF HARTFORD,
CONNECTICUT,

    PLAINTIFF,

vs.                                                             CASE NO. CV 10-J-3292-S

LINDA PEACOCK, et al.,

    DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the plaintiff's motion for summary judgment against defendants Peacock and Schuck, brief and evidence in support of said motion (docs. 51-53), to which the defendants Peacock and Schuck filed a response and evidence in opposition (doc. 59), and the plaintiff thereafter filed a reply (doc. 61). Having considered the pleadings, evidence and relevant law, the court finds as follows:

The plaintiff provided defendants Peacock and Schuck with a policy of homeowners insurance beginning on May 18, 2005, and renewed each year thereafter up to and through May 18, 2011.[1] Amended petition for declaratory judgment, ¶¶ 15-16. Plaintiff also issued a personal umbrella policy to defendant Peacock, beginning

---

[1] The homeowners policy was originally issued to defendant Peacock on May 18, 2005. Defendant Schuck was added to this policy on July 21, 2005. Amended petition, ¶ 15.

on May 21, 2004, and continuing up to and through May 21, 2011. Defendant Schuck was added to this policy as a named insured on July 21, 2005, and has been so covered ever since. Amended petition, ¶¶ 17-18.

The plaintiff brought this declaratory judgment action seeking a declaration that it does not owe defendants Peacock or Schuck a duty to defend or indemnify under these policies based on these defendants involvement in multiple condominium projects in Orange Beach, Alabama, for which they have been sued in state court and federal court. Amended petition, ¶¶ 22-27, 43-57, 68-70. Plaintiff is currently defending Schuck in the underlying litigation pursuant to a reservation of rights.[2] Amended petition, ¶¶ 31, 60, 73.

Plaintiff seeks a declaration that the two policies of insurance it issued to defendants Schuck and Peacock do not provide coverage for the various claims against these defendants in the three pending lawsuits underlying this action.

## FACTUAL BACKGROUND

The court finds the relevant and undisputed facts of this case to be as follows:

Defendants Peacock and Schuck made claims on the policies of insurance with regard to the underlying litigation. Plaintiff exhibits E (doc. 53-5). In brief, the

---

[2]Defendant Peacock, a licensed attorney, is being defended by her law firm's malpractice insurance carrier. Amended petition, ¶¶ 33, 64, 75.

underlying suits are all related to the development of two separate condominium projects in or near Orange Beach, Alabama, those being the Wolf Bay Project and the Paradise Resort Project. The Wolf Bay litigation arises from prospective purchasers refusing to actually purchase the condominium units upon completion of construction. Because letters of credit used as collateral for the project were allowed to expire, the litigation centers around violations of the Securities Act of 1933 and the Investment Advisors Act of 1940. See plaintiff exhibit A (doc. 53-1). The Paradise Resort/Bama Bayou project litigation[3] arose when a $5,000,000.00 construction loan was exhausted prior to completion of the construction. In that action, the lending bank sued guarantors, who in turn sued defendants Schuck and Peacock as members of one of the limited liability companies that invested in the project. *See* plaintiff exhibits B and C (docs. 53-2, 53-3). That litigation also states claims for various types of securities fraud.

Yet more litigation was brought in federal court by the various investors in the Bama Bayou project against defendants Peacock, Schuck and others, again bringing claims of securities fraud. Plaintiff exhibit D (doc. 53-4). Additional litigation, which does not specifically name Peacock and Schuck as defendants, also arose out of the failed developments and is currently pending.

---

[3]Defendant Peacock is not a named party to that litigation.

As stated above, the plaintiff issued two policies of insurance to the defendants, which were in effect at the time the claims in the underlying suits arose. In relevant part, the homeowners policy (plaintiff exhibit S) reads as follows:

---

### SECTION II - LIABILITY COVERAGES
---

**COVERAGE E- PERSONAL LIABILITY**

If a claim is made or a suit is brought against any insured for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, even if the claim or suit is false, we will:

a. Pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and

b. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

---
### SECTION II - EXCLUSIONS
---

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to bodily injury or property damage:

a. which is expected or intended by any **insured;**

b. Arising out of or in connection with a business engaged in by any insured. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstances involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the business;

4

    c.       Arising out of the rental or holding for rental of any premises by any insured. This exclusion does not apply to the rental or holding for rental of an insured location:

            (1) on an occasional basis if used only as a residence.

            (2) in part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

            (3) in part, as an office, school, studio or private garage;

    d.       arising out of the rendering or failing to render professional services;

    e.       arising out of a premise:

            (1) owned by any insured;

            (2) rented to any insured; or

            (3) rented to others by any insured;

            that is not an insured location;

....

Plaintiff Exhibit S (doc. 53-19) at 12-13.

The personal umbrella policy, contains the following language:

**INSURING AGREEMENT**

In return for payment of premiums when due, and subject to the terms of this policy, we will pay damages for which an "insured" becomes legally liable due to "bodily injury", "property damage", or "personal injury" caused by an "occurrence". This coverage applies only to damages in excess of the "retained limit."

...

**DEFINITIONS**

...

3. "Bodily injury" means bodily harm, sickness or disease. It includes required care, loss of services, death and mental anguish that results.

4. "Business" includes trade, profession or occupation.

...

9. "Occurrence" means:

a.  An accident, including continuous or repeated exposure to substantially the same general conditions, that results in "bodily injury" or "property damage" during the policy period.

b.  An offense, including a series of related offenses, committed during the policy period, that results in "personal injury".
...

Plaintiff exhibit T (doc. 53-20).

### DEFENSE AND ADDITIONAL COVERAGES

### A. Defense

1. We will defend an "insured" if sued as a result of an "occurrence" covered by this policy even if the suit is groundless, false, or fraudulent.

2. We have the right to join in the defense of any suit likely to involve us.

3. We will not be obligated to defend any suit:

    a. If the "occurrence" is covered by any other insurance available to the "insured";

    b. If there is no applicable "primary insurance" in effect at the time of the "occurrence" and the amount of damages claimed or incurred is not more than theapplicable deductible amount shown on the Declarations"; or

    c. After our limit of liability has been exhausted by the payment of judgments or settlements.

    4.    We may investigate and settle any claim or suit as we see fit.

## EXCLUSIONS

This insurance does not apply:

1. To "bodily injury" or "property damage" arising out of an act which is expected or intended by an "insured" to cause "bodily injury" or "property damage". This exclusion applies even if the "bodily injury" or "property damage":

    a. Is of a different kind, quality or degree than expected or intended; or

    b. Is sustained by a different person or entity than expected or intended.

...

2. To "bodily injury", "property damage", or "personal injury" arising out of "business" pursuits or "business" property of any "insured".

    This exclusion does not apply to:

    a. Part-time jobs of "family members" who are minors or students under 21 years of age.

    b. Civic activities, other than professional services, performed by an "insured" without pay.

...

3. To "bodily injury", "property damage", or "personal injury" arising out of the rendering of or failure to render any professional service.

4. To "bodily injury", "property damage", or "personal injury" arising out of an "insured's" act, error or omission as a member of a corporation's board of directors or as an officer of a corporation. This exclusion does not apply if the corporation:

    a. Is a not for profit corporation;

    b. Does not involve an "insured's" "business"; and

> c. Such "insured" serves without pay

Plaintiff Exhibit T (doc. 53-20), at 2-3.

Not surprisingly, plaintiff asserts the exclusion from coverage in the homeowners policy for property damage or bodily injury "arising out of or in connection with a business engaged in by any insured"; and the exclusion from coverage in the personal umbrella policy for "bodily injury", "property damage", or "personal injury" arising out of "business" pursuits or "business" property of any "insured", apply. *See e.g.*, plaintiff exhibits E, F and H (doc. 53-5, 53-6, 53-8); plaintiff's brief (doc. 52) at 3. Additionally, because defendant Peacock is an attorney being represented by her legal malpractice insurer, plaintiff has asserted the homeowners and umbrella policies issued by it are excess to the malpractice coverage she has. Plaintiff exhibit G (doc. 53-7).

The parties do not dispute that defendant Peacock is, in fact, an licensed attorney and a shareholder in a law firm. Similarly, the parties do not dispute that defendant Schuck is a corporate psychologist. To date, plaintiff has provided defendant Schuck with a defense in the underlying actions, pursuant to a reservation of rights. Similarly, plaintiff has provided Peacock with a defense and retained the attorney of Peacock's choosing to do so.

The sole issue before the court is the parties' dispute concerning whether the defendants' real estate ventures constitute a "business" so as to bring them within the policies' exclusions. Plaintiff's brief (doc. 52) at 16, defendants' brief (doc. 59) at 3.

## SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party' case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578,

1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

## LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the nonmoving party and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers the pending motion.

As stated previously, the issue before the court is whether the defendants' ventures into real estate are within the "business" exclusions of the policies. If the ventures are so defined, the exclusions apply and the plaintiff would be entitled to have judgment entered in its favor in this case, based on a finding that there is no duty to defend or indemnify.

Under Alabama law, the insured bears the burden of showing coverage, while the insurer has the burden of establishing an exclusion to coverage. *North River Insurance Co. v. Overton*, 59 So.3d 1, 5 (Ala.2010); *Twin City Fire Insurance Co. v.*

*Alfa Mutual Insurance Co.*, 817 So.2d 687, 697 (Ala.2001); *accord Pennsylvania National Mutual Casualty Insurance Co. v. Roberts Brothers, Inc*., 550 F.Supp.2d 1295, 1303 (S.D.Ala.2008). To determine an insurer's duty to defend its insured, a court looks to the language of the insurance policy and the allegations in the complaint filed against the insured. *Thorn v. American States Ins. Co.*, 266 F.Supp.2d 1346, 1349 (M.D.Ala. 2002)("An insurer's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured."); *Alfa Mutual Ins. Co. v. Morrison*, 613 So.2d 381, 382 (Ala.1993) ("The insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the suit against the insured."). A court cannot consider the language in the policy in isolation, but must consider the policy as a whole. *American Resources Ins. Co. v. H & H Stephens Const., Inc*., 939 So.2d 868, 873 (Ala.,2006), citing *Turner v. United States Fidelity & Guar. Co.*, 440 So.2d 1026 (Ala.1983); *Nationwide Ins. Co. v. Rhodes*, 870 So.2d 695, 696-97 (Ala.2003) (quoting *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 308-09 (Ala.1999)).

An exclusion in an insurance policy is a provision that eliminates coverage that would have existed in the absence of the exclusion. *Royal Ins. Co. of America v. Thomas* , 879 So.2d 1144, 1149 (Ala.2003); citing *Coppi v. West American Ins. Co.*,

247 Neb. 1, 11, 524 N.W.2d 804, 813 (1994). Under Alabama law, exclusions are interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company that drafted and issued the policy. *Cincinnati Ins. Co. v. Lee Anesthesia, P.C.*, 641 So.2d 247, 249 (Ala.1994); *Guaranty National Ins. Co. v. Marshall County Brd. of Ed.*, 540 So.2d 745, 748 (Ala.1989); *Alliance Ins. Co. v. Reynolds*, 494 So.2d 609 (Ala.1986). However, "insurance companies have the right to limit the coverage offered through the use of exclusions in their policies, provided that those exclusions do not violate a statute or public policy.... If an individual purchases a policy containing an unambiguous exclusion that does not violate a statute or public policy, courts will enforce the contract as written." *Alfa Specialty Ins. Co. v. Jennings*, 906 So.2d 195, 199 (Ala.Civ.App.2005), *quoting Hooper v. Allstate Ins*. Co., 571 So.2d at 1002.

Both policies at issue define "business" to include "trade, profession or occupation," and exclude injuries or damages arising from the same. Plaintiff exhibits S and T. The defendants allege the term "business" is ambiguous and therefore should be interpreted in favor of the them, the insured. *Mega Life & Health Ins. Co. v. Pieniozek*, 585 F.3d 1399, 1406 (11th Cir.2009).

"Whether a provision of an insurance policy is ambiguous is a question of law. *Safeway Ins. Co.*, 912 So.2d 1140, 1143 (Ala.2005), citing *Turvin v. Alfa Mutual Gen.*

*Insurance Co.*, 774 So.2d 597,599 (Ala.Civ.App.2000).

> The test to be applied by a court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean. In determining whether an ambiguity exists, a court should apply the common interpretation of the language alleged to be ambiguous. This means that the terms of an insurance policy should be given a rational and practical construction.

*Porterfield v. Audubon Indem. Co.*, 856 So.2d 789, 799 (Ala.2002) (internal citations and quotations omitted).

Alabama law provides that "[a] court must not rewrite a policy so as to include or exclude coverage that was not intended." *State Farm Mut. Auto. Ins. Co. v. Brown*, 26 So.3d 1167, 1169 (Ala.2009) (citations omitted). "It is well settled that any ambiguity in the policy is to be construed against the drafter and in favor of the insured." *First Mercury Syndicate, Inc. v. Franklin County*, 623 So.2d 1075, 1077 (Ala.1993). The terms of an insurance policy are ambiguous only if the policy's provisions are readily susceptible to two or more constructions or there is reasonable doubt or confusion as to their meaning. *State Farm Fire & Casualty v. Slade*, 747 So.2d 293, 308-309 (Ala.1999). *See also Shrader v. Employers Mut. Cas. Co.*, 907 So.2d 1026, 1033 (Ala.2005) (An insurance provision is ambiguous "when it may be understood in more than one way or when it refers to two or more things at the same time."); *Lambert v. Coregis Ins. Co., Inc.*, 950 So.2d 1156, 1162 (Ala.2006)("A term

in a contract is ambiguous only if, when given the context, the term can reasonably be open to different interpretations by people of ordinary intelligence."); *Progressive Specialty Ins. Co. v. Naramore*, 950 So.2d 1138, 1141 (Ala.2006) ("In determining whether the language of a contract is ambiguous, courts construe the words according to the interpretation ordinary men would place on the language used therein.... The words are given the meaning that persons with a usual and ordinary understanding would place on the words.").

The court has considered the foregoing rules of law and rules of construction, and finds there is nothing ambiguous about the term "business" as used in the insurance contracts in question. This very question, whether investment in real estate for purposes of financial gain, is a "business pursuit" or "business activity" within the meaning of exclusions in homeowners policies, has been answered by the Alabama Supreme Court in the affirmative:

> The word "business" and the phrase "business pursuits" appear in many insurance policies, and courts from other jurisdictions have construed and applied this language in a variety of factual circumstances. *E.g.*, *Saha v. Aetna Cas. & Surety Co.*, 427 So.2d 316 (Fla.Dist.Ct.App. 1983); *Eyler v. Nationwide Mutual Fire Ins. Co.*, 824 S.W.2d 855 (Ky.1992); *Grossman v. American Family Mut. Ins. Co.*, 461 N.W.2d 489 (Minn.Ct.App.1990); *Brickell v. United States Fire Ins. Co.*, 436 So.2d 797 (Miss.1983). *See generally* Annot., Construction and Application of "Business Pursuits" Exclusion Provision in General Liability Policy, 48 A.L.R.3d 1096 (1973).

This Court has had several occasions to interpret and apply the terms "business" and "business pursuits." *Pullen v. Cincinnati Ins. Co.*, 400 So.2d 393 (Ala.1981); *Stanley v. American Fire & Cas. Co.*, 361 So.2d 1030 (Ala.1978). In *Stanley,* the Court held that an insured's babysitting for remuneration constituted a "business pursuit" within the meaning of a homeowner's policy, which excluded coverage for "bodily injury/ property damage arising out of business pursuits of any insured except activities therein which are ordinarily incidental to non-business pursuits." 361 So.2d at 1032-33. In *Stanley*, a child in the insured's care was injured when she fell backwards into a bed of hot coals in the insured's fireplace. For several months before the accident, the insured had babysat the children of various friends and neighbors in her home. As compensation for her services, the insured received $3 per child, per day.

In holding that the insured's supervision of children for remuneration constituted a "business pursuit," the Court in *Stanley* quoted with approval language from a California Court of Appeals opinion defining "business" and "business pursuit":

> " 'Business' in its broad sense embraces anything about which a person may be busy, and in its usual sense, signifies an undertaking or calling for gain, profit, advantage or livelihood. While 'business pursuit' in some contexts is synonymous with 'business,' it more accurately denotes a continued, extended or prolonged course of 'business or occupation.' "

*Id.* at 1033 (*quoting Crane v. State Farm Fire & Cas. Co.*, 14 Cal.App.3d 727, 92 Cal.Rptr. 621 (Dist.Ct.App.), *rev'd,* 5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129 (1971)). Although the *Stanley* Court stated that the exclusionary provision at issue was "poorly worded" and that it could have been drafted with greater specificity, the Court did not find it ambiguous in the factual circumstances of the case. 361 So.2d at 1033.

Although the AFIC and CIC policies could have defined the terms

"business" and "business pursuits" more clearly, we cannot say that they are ambiguous in the circumstances of this case. *See Stanley v. American Fire & Cas. Co., supra.* Therefore, when they are applied as written, we think the "business pursuits" and "business" exclusions of the AFIC and CIC policies, respectively, apply to exclude coverage for any bodily injury or property damage arising out of John Vallas's involvement in the limited partnership.

Considering the CIC policy first, we cannot say that the limited partnership, which was formed to buy and sell investment real property for capital gain, was not "an undertaking ... for gain [or] profit." Likewise, we cannot say that the limited partnership was not a "business pursuit."

*Vallas v. Cincinnati Ins. Co.*, 624 So.2d 568, 571 (Ala.1993). Similarly, the Southern District of Alabama, applying Alabama law, ruled that:

The Homeowners Policy excludes "any bodily injury or property damage arising out of [the] business pursuits of any insured ... unless those activities are ordinarily incident to non-business pursuits." Similarly, the Umbrella Policy excludes "any loss arising out of [the] business pursuits or business property of an insured." In the current matter, the applicable business pursuits exclusions operate to preclude coverage as to the state claims brought against Mr. and Mrs. Blocker, both collectively and individually. Mrs. Blocker's purchase of the house with a commercial loan, the subsequent resale of it and her purchase of a lot from the Johnsons with the express intent of reselling that lot to avoid litigation clearly constitutes a business pursuit under the Alabama Supreme Court's interpretation of that phrase. *See Stanley*, 361 So.2d at 1033. During the time period Mrs. Blocker owned the property, construction of the house was completed, interest payments were made and the property was marketed and sold. Furthermore, Mrs. Blocker secured a business loan to acquire the property. These facts alone justify the Court in finding that Mrs. Blocker's purchase and resale of the piece of property in question was a business pursuit.

16

*American Nat. Property and Cas. Co. v. Blocker*, 165 F.Supp.2d 1288, 1298 (S.D.Ala.2001).

Because the court finds that the business exclusions in the policies of insurance at issue apply, and therefore plaintiff has no obligation to defend or indemnify under the policies, the court does not consider the parties other arguments as to whether other exclusions also apply.[4]

The defendants also argue that they relied on the representations of their insurance agent, Dan Mikos, in believing the above policies of insurance would provide coverage should they be sued for their involvement in these developments. Defendants' response, at 5-6, 13-14. Glaringly absent is any allegation, let alone evidence, that Mikos or his agency, Mikos/Kampakis, has the authority to act as representatives of plaintiff insurer. In fact, the only evidence before the court is that the insurance agent was acting on behalf of Peacock and Schuck, and not the plaintiff. *See e.g.*, Plaintiff exhibit S (doc. 53-19), Homeowner's Policy (showing that "Your Agency's Name And Address" lists "Mikos Kampakis Ins Svcs"). The defendants allege that they relied on Mikos for "insurance advice, that the Policies covered

---

[4] In her affidavit, defendant Peacock refers to representations from her insurance agent as to coverage, noting that "my clear expectation from this e-mail and the contemporaneous conversations was that we were covered individually for these ***business*** activities..." (emphasis added). Affidavit of Peacock, submitted as exhibit 1 to plaintiff's response (doc. 59). Her emails to her insurance agent, attached to her affidavit, further contain statements such as "It covers me and my business partner... and our entities..." *Id.*

17

claims related to their secondary projects...." Defendants' response, at 16. Glaringly absent is any allegation that Mikos' representations could bind the plaintiff, or that the defendants relied on the plaintiff's representations regarding coverage.[5]

## CONCLUSION

Having considered the foregoing, the court is of the opinion that the plaintiff's motion for summary judgment is due to be granted, as a matter of law, for the reasons set forth herein. The court specifically finds that no coverage is afforded to defendants Peacock and Schuck under the policies for the underlying claims. The plaintiff does not have any duty to defend Peacock and Schuck with regard to any of the referenced law suits. The court further finds that the plaintiff does not have a duty to indemnify Peacock or Schuck with regard to the referenced law suits.

Therefore, the court shall enter judgment in favor of the plaintiff and against all defendants on the plaintiff's amended petition for declaratory judgment, the court

---

[5]"Under the reasonable reliance standard, a person cannot blindly rely on an agent's oral representations to the exclusion of written disclosures in a contract." *BSI Rentals, Inc. v. Wendt*, 893 So.2d 1184, 1191 (Ala.Civ.App.2004). The Alabama Supreme Court has considered whether it was reasonable for an insured to rely on an insurance agent's representations about an insurance policy when those representations are contradicted by language in the insurance policy itself, and concluded that it is not. See *Liberty National Life Insurance Co. v. Ingram*, 887 So.2d 222 (Ala.2004); *Alfa Life Insurance Corp. v. Green*, 881 So.2d 987 (Ala.2003); *Maloof v. John Hancock Life Ins. Co.*, 60 So.3d 263, 271 (Ala.2010).

finding no genuine issues of material fact remain and that the plaintiff is entitled to judgment in its favor and against the defendants as a matter of law.

**DONE** and **ORDERED** this the 14th day of December, 2011.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE